`
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
|---|---|---|
| | * | |
| VERSUS | * | NO. 14-117 |
| | * | |
| DOMINICK GULLO | * | SECTION "L" |


## ORDER AND REASONS

Before the Court is Defendant Dominick Gullo's Motion to Suppress Evidence. (Rec. Doc. 31). The Court has reviewed the documents and applicable law and, having heard oral argument on this motion, now issues this Order and Reasons.

### I. BACKGROUND

This case arises from allegations of illegal firearm possession stemming from a traffic stop. Count Two of the two-count Indictment charges Defendant Dominick Gullo, along with his co-defendant, Joseph F. Gagliano, with possession of an unregistered silencer in violation of Title 26, United States Code, Sections 5841, 5845(a), and 5871, all in violation of Title 26, United States Code, Section 5861(d), and Title 18, United States Code, Section 2. Co-Defendant Gagliano is also charged with illegal possession of a firearm as a convicted felon in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2.

Jefferson Parish Sheriff's Office ("JPSO") Deputy Lamar Hooks executed a traffic stop of Defendant Gullo and Defendant Gagliano in a white Ford van on May 7, 2014. The JPSO dispatcher had reported over the JPSO radio that a license plate reader in the vicinity of Metairie Road and Orpheum Ave. had captured a stolen license plate and transmitted an alert to the JPSO. (Rec. Doc. 35-1). Deputy Hooks, hearing this report, observed a vehicle corresponding to the

1

description and bearing the stolen license plate, so Deputy Hooks followed the vehicle and turned on his emergency lights. (Rec. Doc. 35-6 at 4). The vehicle eventually turned into a driveway at 209 E. William David Pkwy and stopped. (Rec. Doc. 35-6 at 4).

In his report, Deputy Hooks states that he observed Defendant Gagliano exit the front passenger door and Defendant Gullo exit from the driver's door. (Rec. Doc. 35-6 at 4). After observing that neither defendant had a weapon, Deputy Hooks approached Defendant Gullo by the rear doors of the van and requested insurance and registration specific to the vehicle. (Rec. Doc. 35 at 2). Defendant Gullo proceeded to search the van's glove box for the documentation, but after a few minutes of a fruitless search, Defendant Gullo "gestured a motion of abandonment with both of his hands and admitted he had no documentation to provide." (Rec. Doc. 35-6 at 4). Since Defendant Gullo failed to produce the requisite documentation, and Deputy Hooks knew that the vehicle bore a stolen license plate, Deputy Hooks advised Defendant Gullo of his *Miranda* rights and placed him in handcuffs. (Rec. Doc. 35-6 at 4). Deputy Hooks then placed Defendant Gullo in the rear seat of his police vehicle. (Rec. Doc. 35-6 at 4).

Additional responding deputies began to arrive to assist Deputy Hooks at the scene. (Rec. Doc. 35-6 at 4). Deputy Hooks began to question Defendant Gullo about the stolen license plate. (Rec. Doc. 35-6 at 5). Defendant Gullo explained that around 3:00 p.m. that day he was seated in C.C.'s Coffee Business on Metarie Road when an African American female entered the coffee shop and asked patrons if anyone was interested in purchasing a van for $300.00. (Rec. Doc. 35-6 at 5). Defendant Gullo further stated that he agreed to purchase the vehicle, and that the female said she would return to the same location the following day at the same time with the necessary paperwork to effectuate the purchase. (Rec. Doc. 35-6 at 5).

Deputy Hooks then conducted a NCIC Records Check on the vehicle's VIN. This check indicated the last registered owner to be a Natural Gas Service Company located in Raceland, LA, but not listed as a stolen vehicle. (Rec. Doc. 35-6 at 5). At this point, Deputy Hooks decided to impound the vehicle based on the lack of proof of insurance and based on the arrest of Defendant Gullo for the stolen license plate possession. (Rec. Doc. 35-6 at 5).

In anticipation of the removal of the vehicle by a towing company, the deputies carried out an alleged inventory search of the vehicle's contents. (Rec. Doc. 35-6 at 5). Prior to the alleged inventory search, the deputies removed Gullo's handcuffs when the deputies thought the Defendants would only be charged with operating a vehicle with a stolen license plate, a misdemeanor offense (Rec. Doc. 35-6 at 6). When the officers opened the rear, passenger side-door, they discovered two chairs, mounted on boards, placed in front of permanently installed residential windows. (Rec. Doc. 35-6 at 5). The residential windows were painted black, preventing anyone from seeing into the vehicle. (Rec. Doc. 35-6 at 5). Due to the suspicious nature of the vehicle's interior, Deputy Hooks requested a JPSO crime scene technician to photograph the vehicle and possibly lift fingerprints. When the crime scene technician entered the vehicle, a portion of carpet was moved, exposing a .22 caliber rifle. (Rec. Doc. 35-6 at 5). Upon further search of the van, the officers discovered a silencer located in the side door and some length of cannon fuse from the cargo area. (Rec. Doc. 35-6 at 6).

After the deputies uncovered these suspicious items, Defendant Gagliano stated that he was never in the van. (Rec. Doc. 35-6 at 6). Defendant Gullo concurred with this statement. Both averred that they had never observed the rear cargo area of the van and had no knowledge of what may have been inside. (Rec. Doc. 35-6 at 6). On May 8, 2014, law enforcement applied for and obtained a search warrant to conduct a more thorough search of the van. (Rec.

Doc. 35 at 3). Pursuant to the search, two hats and two pairs of gloves along with a latent print were recovered.

## II.     PRESENT MOTION

### A. Defendant's Motion to Suppress Evidence (Rec. Doc. 31), Reply Memorandum (Rec. Doc. 39), Post Hearing Memorandum (Rec. Doc. 62)

On August 4, 2014, Defendant Gullo filed the present motion to suppress the rifle, the silencer, and all items seized during the May 7, 2014 search of the van, asserting that the search violated his Fourth Amendment right against unlawful search and seizure. (Rec. Doc. 31). Gullo claims that he was lawfully operating his 1998 Ford Van when he was stopped by a deputy and cited for having a stolen license plate and for not having proof of insurance for the vehicle. (Rec. Doc. 31 at 2). Gullo also claims that the deputy never asked him to present proof of insurance, and that Gullo did have liability insurance that covered the vehicle. (Rec. Doc. 31 at 2). Gullo attached a copy of this alleged insurance to his motion. The provided insurance references a 2001 Volvo owned by Gullo and not the 1998 Ford Van at issue.

Gullo asserts that the vehicle was parked in his driveway when the deputy stopped him, and the vehicle did not present a public safety issue nor require a community caretaking function. (Rec. Doc. 31 at 2). Gullo contends that the lack of safety concern is further illustrated by the fact that once the deputies decided to issue a misdemeanor summons for the stolen license plate, and before the deputies searched the car, the deputies released Gullo from the patrol car and removed the handcuffs. (Rec. Doc. 31 at 2). Gullo argues that despite the fact that the car was parked in the driveway and that the deputies had determined that the car was not stolen, the deputies still decided to impound the vehicle to a towing company's facility. (Rec. Doc. 31 at 2).

Gullo argues that the deputies proceeded to carry out an "alleged inventory search" of the vehicle "without probable cause, without a warrant, absent exigent circumstances, and without

the consent of the Defendant." (Rec. Doc. 31 at 3). Gullo asserts that the search did not constitute an inventory search because he was never afforded the opportunity to safeguard his personal belongings in the van or to secure the van, even though the deputies only intended to issue a summons at the time. (Rec. Doc. 31 at 3).

After the Court heard oral argument on Gullo's Motion to Suppress Evidence, Gullo submitted a post hearing memorandum in support of his motion. In that memorandum, Gullo again asserts that the inventory search was a pretext for a police investigation, as the police only planned to issue Gullo a misdemeanor summons and the search never produced an inventory. (Rec. Doc. 64-2 at 9-15). Gullo also contends that even if the officers decided to tow the van due to the lack of insurance, "[t]hat decision, standing alone, does not confer the right to search without a warrant." (Rec. Doc. 64-2 at 15). Moreover, Gullo argues that the search cannot be deemed an inventory search because it was not carried out "according to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, (3) protecting the police from danger." (Rec. Doc. 64-2 at 15). Gullo avers that "there was no testimony as to what constituted the standardized regulations and procedures of the JPSO." (Rec. Doc. 64-12 at 15). Gullo also contends that he had valid insurance, as evidenced by the Volvo insurance attached as an exhibit to his motion. (Rec. Doc. 64-2 at 24-25).

According to Gullo, the search did not constitute an inventory search and does not fall within any of the other Fourth Amendment exceptions. Specifically, the search was not a search incident to arrest; there were no exigent circumstances; and there was no consent. (Rec. Doc. 64-2 at 28). Accordingly, Gullo avers that the Court should suppress the evidence because it

5

represents "fruit of the poisonous tree." (Rec. Doc. 62 at 28) (citing *United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001).

### B. Government's Opposition (Rec. Doc. 35) and Post Hearing Memorandum

In opposition, the Government claims that the search was lawful and that the Court should deny the motion because "no factual dispute exists regarding the Sheriff's Office requirement to seize the van and conduct an inventory search." (Rec. Doc. 35 at 5). The Government argues that Deputy Hooks made a lawful investigatory stop after being notified of the stolen license plate number and observing the van bearing that number. (Rec. Doc. 35 at 5). The Government asserts that once Deputy Hooks requested Gullo's registration and insurance documentation for the vehicle, and Gullo was unable to produce the paperwork, Louisiana law compelled Deputy Hooks to impound the vehicle. (Rec. Doc. 35 at 5). Specifically, the Government maintains that La. R.S. 32:863.1(C)(1)(a) required the deputies to impound the van. The Government further asserts that prior to handing the van over to a third party towing company, the JPSO deputies had to conduct an inventory search. The Government argues that "[i]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." (Rec. Doc. 35 at 6) (citing *Colorado v. Bertine*, 479 U.S. 367, 373 (1987).

The Government denies Gullo's claim that Deputy Hooks never requested proof of insurance. In support of this assertion, the Government points to Deputy Hooks' police report and the fact that Deputy Hooks ultimately issued a citation to Gullo for failing to present proof of insurance. (Rec. Doc. 35 at 7). Finally, the Government notes that Gullo's attachment of insurance that does not cover the Ford Van provides further support for the fact that Gullo was unable to provide Deputy Hooks with proof of his insurance on May 7, 2014.

6

In the Government's post hearing memorandum, the Government reasserts that there is no evidence to support Gullo's contention that Deputy Hooks failed to request proof of insurance. (Rec. Doc. 61 at 3). Government emphasizes that it is of no bearing whether Gullo had insurance that could cover the Ford Van's liability; the only material fact is whether Gullo had proof of insurance when Deputy Hooks asked for that documentation. (Rec. Doc. 61 at 4). In response to Gullo's assertion that he could have secured the van's contents once the police knew they would not place him under arrest, the Government avers that "[w]hether Gullo was arrested or not, Louisiana law required the van to be towed for failure to have proof of insurance in the vehicle." (Rec. Doc. 61 at 4). Government contends that the fact that the van was in Gullo's driveway does not affect the Fourth Amendment analysis, as Louisiana law mandates that the JPSO deputies towed the van. (Rec. Doc. 61 at 4). Moreover, Deputy Hooks testified that "because the van was being towed and becoming JPSO's responsibility, policy required an inventory search to take place." (Rec. Doc. 61 at 4-5). Finally, Government argues that the search conducted pursuant to the warrant "would have inevitably led to the recovery and seizure of the rifle, scope and cannon fuse and serves as an additional reason to deny Gullo's motion to suppress." (Rec. Doc. 61 at 5).

## III. LAW & ANALYSIS

The Fourth Amendment protects against unreasonable search and seizures. U.S. Const. amend IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). An inventory search is one such exception. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).

### A. The Initial Stop of Defendant Gullo

"The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver…." *Brendlin v. California*, 551 U.S. 249, 255 (2007). A traffic stop constitutes a lawful investigatory stop if it is "lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

Deputy Hooks' police report and testimony relayed that the JPSO operator notified him over radio communications that a camera had picked up a white van bearing a stolen license plate. (Rec. Doc. 35-6; Transcript p. 8). Government provided a copy of the camera record that memorialized that the camera had registered a white van bearing a stolen license plate on May 7, 2014. (Rec. Doc. 35-1 at 1). Deputy Hooks recorded in his police report and reaffirmed in his testimony that he observed a white van that bore the stolen license plate and followed the van and eventually stopped it at Gullo's residence. (Rec. Doc. 35-6; Transcript p. 9). Based on this evidence, Deputy Hooks made an initial lawful stop of the vehicle to investigate the stolen license plate.

### B. The Impoundment of Gullo's Vehicle and the Inventory Search

Louisiana law demands that a police officer impound a vehicle if the operator is unable to provide proof of insurance. Under Louisiana law:

> If the operator of a motor vehicle is unable to show compliance with the provisions of this Part by displaying the required document when requested to do so, the *motor vehicle shall be impounded* and the operator shall be issued a notice of noncompliance with the provisions of this Part on a form to be provided by the department. Notwithstanding the provisions of R.S. 32:852(E), such notice may be sent by first class mail.

La R.S. 32:863.1(C)(1)(a) (emphasis added).

In an unpublished opinion, the Fifth Circuit determined that this statute requires a police officer to impound a vehicle if the vehicle operator is unable to provide proof of insurance when the

police officer requests it. *United States v. Swan*, 259 F. App'x 656, 660-61 (5th Cir. 2007). In other words, the police officer's decision to impound the vehicle is not discretionary. *Id.* Gullo's assertion that the officers "decided to have the vehicle removed to a towing company's facility" is therefore erroneous, as the officers were compelled to impound the vehicle *if* Deputy Hooks demanded and Gullo did not provide proof of insurance. Based on the police report and Deputy Hooks' credible testimony, and the lack of any contradicting evidence, the Court finds that Deputy Hooks asked for documentation of the Ford van's insurance and Gullo failed to produce such documentation.

Gullo dedicates much of his post hearing memorandum to the fact that the JPSO only planned to issue Gullo a summons, asserting that the officers did not need to impound the vehicle as it was parked in his driveway and there was thus no need to "impound the [vehicle] pursuant to 'community caretaking functions.'" (Rec. Doc. 64-2 at 27) (citing *South Dakota v. Opperman*, 428 U.S. 364, 370 at n. 5 (1976)). But Gullo's argument is misguided as there is no need to analyze the decision to impound the vehicle under the *Opperman* factors when a Louisiana statute required the JPSO officers to impound the van. Pursuant to La R.S. 32:863.1(C)(1)(a), the JPSO officers lawfully impounded Gullo's vehicle.

Gullo's insurance card that he included with his motion has no bearing on the Court's analysis of the impoundment's legality. It is of no consequence that Gullo is able to produce insurance which he alleges covered the Ford van *after* Deputy Hooks requested the document. The only relevant fact is whether Gullo was able to supply insurance documentation for the Ford van on the night of May 7, 2014, when Deputy Hooks asked for the documentation. Based on the police report and Deputy Hooks' testimony, it is apparent that Gullo was unable to supply

9

such documentation, and the impoundment of the Ford Van was therefore legal under Louisiana law.

The inventory search is the next issue in the chain of Gullo's Fourth Amendment challenges. "Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Bertine*, 479 U.S. at 371. The Supreme Court has noted that "[t]he policies of the warrant requirement are not implicated in inventory search." *Id. See generally Harris v. United States*, 390 U.S. 234, 236 (1968) (noting that the purpose of an inventory search was not to search the car but to "protect the car while in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these special circumstances."). Inventory searches do not implicate the Fourth Amendment so long as the police carry out these searches according to standardized procedures and do not conduct these searches "in bad faith or for the sole purpose of investigation." *Id.* at 372. In other words, police officers cannot use inventory searches as a pretext to fulfill their investigative needs.

Gullo argues that the JPSO officers did not carry out an inventory search but artfully concealed their warrantless, illegal investigatory search by labeling the search an inventory search. Gullo avers that the search cannot be deemed an inventory search because the JPSO officers did not adhere to any JPSO inventory search policy. Inventory searches must be executed pursuant to standardized police procedure to be deemed reasonable under the Fourth Amendment. *Opperman*, 428 at 369. While this inventory search policy does not have to be written, it must be considered police policy. *Swan,* 259 F. App'x at 661. In *Swan*, the Fifth Circuit accepted police testimony as sufficient evidence of the police's inventory search policy. *Id.*

Deputy Hooks testified that once he decided to tow the car, he was obligated as a law enforcement officer to carry out an inventory search of the car to "avoid an allegation at a later time that something's missing from the vehicle that wasn't there in the first place." (Transcript p. 15). Government also provided the Court with the JPSO inventory form that Deputy Hooks executed when the JPSO carried out the inventory search of Gullo's van. (Rec. Doc. 35-4). Based on the standardized JPSO inventory form and Deputy Hooks' testimony, it is evident that it is JPSO policy to carry out an inventory search prior to impoundment. The JPSO officers thus carried out the inventory search of Gullo's van pursuant to JPSO policy, and the inventory search was therefore reasonable under the Fourth Amendment.

Gullo also argues both in his Motion and in his post hearing memorandum that the search did not constitute an inventory search because the officers never recorded an itemized inventory list. (Rec. Doc. 23). As Deputy Hooks indicated during his testimony, the inventory search yielded no items that required memorialization; there were no items of value in the car. Specifically, Deputy Hooks stated that " [the car] was barren. There was nothing to mention…[t]he whole point of [an inventory search] is for the liability of something of significant value, such as a pair of diamond earrings or a gold watch." (Transcript pp. 38-39). The JPSO form specific to Gullo's vehicle supports this contention, as the entire form is filled out but notes "no" next to recoverable items specified by the form. While Defense counsel emphasized that the police failed to record the recovered gloves, hat, and chairs, these items do not fall into a category specified by the JPSO form and do not qualify as "other valuables." There may be an argument that the officer should have recorded these items under "other valuables," but given the items' value and the connotation of the word "valuables," that is a weak argument. Moreover, the failure to include those items does not negate the search's inventory

11

status when taken into account with the rest of the form's completed entries. The argument that the search was not carried out for inventory purposes because of the failure to itemize inventoried items thus falls short and is not persuasive to the0 Court.

It is also well established that as long as the initial justification for the warrantless search rendered the search reasonable, law enforcement can lawfully seize anything in plain view. *Arizona v. Hicks*, 480 U.S. 321, 325 (1987). If the JPSO deputies initiated a lawful inventory search, whose purpose changed once deputies discovered the alarming nature of the vehicle, the search still qualifies as a lawful search. The JPSO deputies did not need to faithfully adhere to their initial inventory objective if the plain view search altered the nature of the search.

Gullo also asserts that the Court should not consider the search to be an inventory search because he could have safeguarded his own possessions since he was at the scene and no longer under arrest. (Rec. Doc. 31 at 3). In other words, Gullo contends that the inventory search was a pretext for an investigative search, as demonstrated by the fact that the deputies could have easily allowed Gullo to collect his personal belongings from the van. The Supreme Court addressed a similar, though not identical, issue when the *Colorado v. Bertine* defendant argued that the inventory search was unreasonable because the defendant could have secured his own property. *Bertine*, 479 U.S. at 373. The Supreme Court rejected this argument, averring that "the reasonableness of any particular government activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." Id. at 374 (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983)). The Supreme Court went on to conclude that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Id*. Under this standard, it is of no

consequence that the JPSO deputies did not afford Gullo the opportunity to safeguard his own valuables since the inventory search was carried out pursuant to JPSO policy.

Since the Court has determined the search was an inventory search and reasonable under the Fourth Amendment, there is no need to analyze Gullo's arguments regarding the lack of probable cause, of consent, and of exigent circumstances. (Rec. Doc. 31 at 3; Rec. Doc. 64-2 at 28). As indicated by the prior discussion, it is well established that police can conduct inventory searches without probable cause and without a warrant. While exigent circumstances (*Mincey*, 437 U.S. 385) and consent to a search (*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)) constitute exceptions to the Fourth Amendment warrant requirement, inventory searches also qualify as an exception. As the Court has already determined the inventory search of the van was lawful, the other analyses would have no bearing on the legality of the search.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Suppress Evidence (Rec. Doc. 31) is **DENIED**.

New Orleans, Louisiana this 2nd day of October, 2014.

_____
UNITED STATES DISTRICT JUDGE